[1] Reported in 261 N.W. 706.
Albert L. Ordean, long-time resident of Duluth and one of its outstanding citizens, died testate thereat September 21, 1928. His will, bearing date August 23, 1926, was duly admitted to probate in and by the probate court October 22, 1928, and such proceedings were thereafter duly had that on July 13, 1931, a decree of final distribution was made and entered. The First National Bank of Duluth (now known as First and American National Bank of Duluth) was appointed by the will to be sole executor thereof and trustee thereunder. It duly qualified in both capacities. The district court of St. Louis county, in appropriate proceedings had, appointed the bank sole trustee under the will so that when the decree of distribution was entered by the probate court the bank as trustee immediately took possession of the residue of the estate and proceeded with the execution and discharge of its trust.
Decedent's will discloses that he was mindful of the responsibility going with the ownership of wealth. Anyone reading its provisions cannot escape the conviction that testator considered his possession thereof as a trusteeship. So we find that by far the greater part of his estate was given to a charitable organization, to be created under the direction of his trustee, as a perpetual endowment, the income from which was to be used for the relief of the worthy poor residing in Duluth. The bequests to individuals are relatively few in number and limited in amount as compared with the entire estate. In respect of the gift to the principal charity, entire responsibility for organizing and establishing the corporation to carry into effect *Page 122 
testator's purpose was intrusted to the First National Bank of Duluth, of which he had been president and principal stockholder over a period of more than 25 years. All of his residuary estate was given to the trustee with three major functions or requirements: (1) To provide for his widow; (2) to make certain gifts, principally to charitable, religious, and public institutions; and (3) to organize and establish the Albert and Louise Ordean Charity. Thus the "Charity" bearing the name of testator and his wife was to be a perpetual and living entity having for its object and purpose relief and sustenance for the worthy poor of his home city. That part of the will to which the present issue is directed reads thus:
"ARTICLE V. All the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath unto THE FIRST NATIONAL BANK OF DULUTH, a national banking association of Duluth, Minnesota, its successors and assigns, FOREVER, but IN TRUST, nevertheless, for the performance of this my will concerning the same, that is to say: * * *
"B. If my wife, Louise H. Ordean, survive me, then upon her death, and if she do not survive me then as soon as may be after my death said Trustee shall: * * *
"17. Purchase and give to said City of Duluth and install all necessary equipment for an athletic field upon that portion of the land now occupied by Northland Country Club which I recently gave to said city and which is not required by my deed of conveyance to be maintained as a park."
Testator's widow died December 16, 1932, at Duluth. Thereafter and on November 25, 1933, the trustee filed an account with petition for allowance thereof and for an order and decree of distribution pursuant to 3 Mason Minn. St. 1934 Supp. § 8100-13. In conformity with the requirements of that statute and the order of the court directing manner and form of service, all persons interested in the res were cited to show cause why the petition should not be granted. On the return day (December 15, 1933) the court made its findings and decree, which, as far as here material, read: *Page 123 
"That the amount and the securities (United States Fourth Liberty Loan 4 1/4% Bonds due October 15, 1938/33 having total par value of $15,000 and book value of $15,478.13), set aside and retained by the Trustee out of the principal of said residuary estate of said decedent to provide for the purchase and installation of equipment for an athletic field as required by Article V, B, Paragraph 17 on Page Nine (9) of said Last Will and Testament of said decedent, be and the same hereby are approved, ratified and confirmed, any portion of said fund remaining unexpended for that purpose to become a part of the residue of said estate and to be turned over by said Trustee to the charitable corporation hereinafter described."
The representatives of the city and the trustee were unable to agree as to the specific items of equipment which should be purchased and given to the city for its athletic field. In June, 1934, the trustee applied to the court for instructions as to what should be purchased to comply with article V, § 17, of the will. While this matter was pending the city moved to vacate that part of the decree quoted above, basing its motion upon the grounds: (1) That no service of the order for hearing had been made upon the attorney general, and (2) that if the service made was adequate under the statute mentioned and the order of the court, yet by reason of inadvertence and excusable neglect on the part of the city it had been deprived of an opportunity to be heard as to the proper interpretation of said § 17, its claim being that the amount ($15,000) set aside by the trustee was wholly inadequate and that at least $150,000 should be set aside for that purpose. At the time of the hearing mentioned the attorney general asked leave also to intervene in support of the city's motion. The trustee and the Ordean Charity appeared specially and objected to the allowance of the motion made by the city and to the granting of the attorney general's petition. The view was taken that the trial court was without jurisdiction to entertain either the motion or the petition for the reason that the will had vested in the trustee the control and discretion of the determination of the issue presented by the city and *Page 124 
the attorney general. In behalf of the Ordean Charity it was further moved that the proceedings be dismissed on the ground that the court had no jurisdiction as against it in view of the fact that the proceedings for the allowance of the trustee's account had terminated before the Charity came into its corporate existence. The court granted the city's motion and also the attorney general's petition. The reasons for the granting thereof are adequately set forth by the court in its memorandum, which reads:
"The only ultimate issue is the interpretation of the word 'necessary' in paragraph 17 of the will. If it was the will of the decedent that the trustee should make such interpretation, that has been done; if it was the decedent's will or is the law that the Court should make such interpretation, that has not been done according to law and after a full hearing of all parties interested.
"The Attorney General has a right to be notified and has a right to be heard. The confusion on this point arose from the fact that the question here is not whether the Attorney General has a right under the statute to supervise, by appeal to the Court, the administration by the City of its parks or playgrounds, but, whether the Attorney General has a right under the statute to see to it, by appeal to the Court, how the Trustee of a charitable trust shall administer a trust which requires the Trustee to purchase and give to the city certain property for park or playground purposes. It seems clear that the Attorney General cannot follow the property, after it has been legally selected and conveyed to the city, and supervise the administration of such property.
"Whether the city gets in, as a matter of right or by the exercise of judicial discretion is not now important."
To review the order granting the city's motion and the attorney general's petition to intervene, the trustee and the Ordean Charity appeal. Counsel have discussed ably and elaborately many issues both in their briefs and upon the oral argument. We think, however, that the trial court pointed out the vital issue in its memorandum, and to this we now direct our attention. *Page 125 
It is of course elementary that language free from doubt leaves no room for construction or interpretation. The "cardinal rule of construction, to which all others must bend, is that the intention of the testator, as expressed in the language used in the will, shall prevail, if it is not inconsistent with the rules of law. Such intention is to be gathered from everything contained within the four corners of the will, read in the light of the surrounding circumstances. One of the highest duties resting upon a court is to carry out the intentions of a testator expressed in valid provisions not repugnant to well-settled principles of public policy. * * * What is sought is not the meaning of the words alone, or the meaning of the writer alone, but the meaning of the words as used by the writer." 6 Dunnell, Minn. Dig. (2 ed. Supps. 1932, 1934) § 10257. It is "the dominant intention to be gathered from the instrument as a whole," not isolated words, that should guide us. And we are required to place a reasonable and sensible construction upon the language used; hence "canons of construction are only aids for ascertaining testamentary intent and are to be followed only so far as they accomplish that end." Id. pp. 864, 865.
As we have already pointed out, testator's wealth was designed to go principally to religious and charitable institutions. These were the special objects of his bounty. Such beneficent purposes should not be thwarted by a lively imagination on our part as to what testator might have intended if his attention had been directed particularly to the phrase "all necessary equipment for an athletic field."
The will discloses, we think beyond question, that authority to administer, direct, and determine each and every purpose of the will (disposing of property amounting to nearly $5,000,000) was given to the trustee. The confidence which testator placed in his bank, the trustee selected and designated by him, is obvious upon even a most casual inspection of the several parts of the will. Thus we find in article V, B1, that the trustee was authorized to "invest in securities of the classes hereinafter described an amount, in the uncontrolled judgment of said Trustee deemed sufficient to create a fund from which the following payments may be made, * * *." *Page 126 
Under that article the total investment to be made for those beneficiaries named thereunder amounts to more than half a million dollars. It seems difficult to conceive of a stronger expression of confidence in the integrity and judgment of the trustee than that expressed in the words just quoted. We also find in the same article, paragraph 14, that $50,000 was to be invested by the trustee in securities and given to the Children's Home Society of Duluth. Therein it was directed that all investments be made through the trustee. In the subsequent paragraph a gift is provided for the Rescue Home for Fallen Women if "being operated by an organization that in the judgment of said Trustee is properly conducting such Home." In paragraph 16 the trustee is authorized to set apart and retain a fund "considered by it to be sufficient to provide a fine, artistic, bronze statue of Daniel Greysolon DuLuth, after whom the City of Duluth is named, and cause such statue to be made by some sculptor of note, and also, coöperating with the citizens of the City of Duluth, provide for a suitable site and for the erection of such statue upon such site." We next come to the disputed paragraph, No. 17. This has heretofore been quoted and need not be repeated here except to say that the trustee was directed to (1) purchase, (2) give to the city of Duluth, and (3) install all necessary equipment for an athletic field. In the next paragraph all the residue of testator's property is given to the trustee to be delivered over to the Charity absolutely upon completing the payment and discharge of the prior bequests. Here, too, we find plenary authority granted to the trustee, not only to handle the fund during the period of its trusteeship, but also to organize the charity by forming, —
"a corporation for the purpose of administering and furnishing relief and charity for the worthy poor who may reside within the corporate limits of the City of Duluth and without discrimination as to age, sex, color or religious inclination of the beneficiary, and when so organized title to all of my estate, subject to the devises and bequests in this will contained and to the trusts in this will provided for, shall vest in such corporation absolutely, and said *Page 127 
Trustee shall pay over to such corporation all of the property of my estate then in its hands except only the funds which it may then hold in trust for purposes not then fully carried out, and as to all of such funds they shall be paid into said corporation by said Trustee when and as the trusts pertaining thereto have been fully carried out."
And further:
"I suggest that as soon as it deems the same advisable said corporation erect in the City of Duluth a substantial administration building. It is not my intention to suggest a home for beneficiaries or a hospital for their aid and relief but a building to be the headquarters in and from which to manage and administer the business and affairs of the corporation, intended, however, that the size, style and location of the building shall conform to the dignity of this charity and the ambition and hope I have for its great good and usefulness to the worthy poor. The funds for acquiring suitable site and purchasing or constructing and equipping a suitable building thereon for the purposes of said corporation may be taken from the principal of the fund in its hands, and I suggest that the balance of said funds be treated as a perpetual endowment fund and together with any unexpended income be kept invested in securities of the classes hereinafter described, and the income therefrom only used for the purposes of said corporation, and to the end that said fund may be kept intact I suggest that such investments be made through the Trust Department of The First National Bank of Duluth, * * *."
In conformity with the authority thus granted, the trustee on December 19, 1933, caused the "Albert and Louise Ordean Charity" to be duly incorporated under the laws of this state. Article V of the certificate of incorporation states:
"This corporation shall have perpetual succession. It is not organized for pecuniary profit and shall have no corporate stock. It shall at all times be maintained and operated as an institution of purely public charity and it shall manage and administer its property and affairs to that end." *Page 128 
There are many other paragraphs in the will indicating the same general purpose of granting to the trustee full authority to act as in its judgment it may deem best. We find in article VI that testator expresses a desire, though not "in any manner a limitation upon the power of my Executor and Trustee," to sell testator's stock in the two corporations in which he was most heavily interested. This authority so to sell he directed the trustee to exercise "as soon as, in the judgment of my Executor and Trustee, it can realize the full reasonable value therefor." And in the same article the trustee is authorized to cause the Charity to be incorporated under the laws "of some other state or country" with authority to take the remaining estate "if in its judgment it is wise or advisable so to do." Taking the provisions of the will as a whole and considering the same with the context of paragraph 17 here for review, it seems clear that the trustee was invested with full power to carry out this provision as well as all others. Its discretion is complete, and its exercise is not subject to control by the court except of course to prevent abuse by the trustee of the discretion so granted. There can be no doubt as to the law. The difficulty generally, as here, arises in respect of its application. As sustaining the position we have taken, see Am. Law Inst. Restatement, Trusts (Tent. Draft No. 3) § 181 of which reads:
"Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion."
The following authorities amongst many sustain this view: Wormley v. Wormley, 8 Wheat. 421, 5 L. ed. 651; Colton v. Colton, 127 U.S. 300, 320, 8 S.Ct. 1164, 32 L. ed. 138; Shelton v. King, 229 U.S. 90, 33 S.Ct. 686, 57 L. ed. 1086; 26 R.C.L. p. 1373, § 234; 8 L.R.A.(N.S.) 398. There is no question in the instant case of abuse of power by the trustee, but rather and only lack thereof.
If respondents' view were to be applied generally in interpreting the will it would necessarily mean that fact questions would arise under many of its provisions. Thus where testator in paragraph 16 directs that the DuLuth statue should be "made by some sculptor *Page 129 of note," that is clearly as much a fact question as is the phrase necessary equipment" for the athletic field. And who is to determine, if not the trustee, as to whether the Rescue Home for Fallen Women is being "properly conducted?" The same is true respecting the expression "worthy poor." When is a person "poor" or "worthy" or both? Who is to determine that question if not the one to whom the property is given for that purpose? Testator was a man of wide business experience. He had reached mature years and had accumulated a comfortable fortune. He had confidence in the judgment, integrity, and capacity of the officers with whom he had been associated in the bank over a period of more than a quarter of a century. It is only natural that he preferred to leave all matters involving discretion and judgment to them. As a businessman he would necessarily know that their judgment and discretion, honestly exercised, should not be subjected to litigation, with consequent dissatisfaction and, above all, the certainty of incurring large items of expense. Nor should we overlook the obvious fact that the city of Duluth is here the recipient of by far the greater part of testator's property. If the city's contention here were to be sustained, it is clear that every dollar taken out of his estate for the building of "grandstand, showers, lockers, field house," to have the "ground prepared with proper fencing," and other improvements to be made and claimed by the city to be "necessary" for future "sports of baseball, football, track activities, tennis courts and hockey courts" and that the cost thereof "will reasonably exceed $150,000," would thereby and to that extent diminish the fund otherwise going to the "worthy poor." It is fortunate for them that the trustee and the Charity have seen fit to fight their cause. Too obvious for further comment, it was testator's purpose and intent that they were the special objects of his bounty.
We hold without hesitancy that the trustee had plenary power to do what it did in the instant case and that on the merits the order appealed from must be and it is reversed. *Page 130