In the Matter of the TRUSTS Created by and under the Last Will and Testament of John Charles CAMPBELL, Jr., Deceased, for the Benefit of Robert N. Campbell and the Robert N. Campbell Trust U/A Dated August 2, 1974.

Janet S. CAMPBELL, Individually, et al., by Janet S. Campbell, Their Guardian Ad Litem, Appellants,

v.

Robert Noel CAMPBELL, Respondent,

Northern City National Bank of Duluth, as Trustee under the Last Will and Testament of John Charles Campbell, Jr., etc., Respondent.

No. 47036.

Supreme Court of Minnesota.

Sept. 23, 1977.

Hanft, Fride, O'Brien & Harries, Edward T. Fride and Rita D. Hutchens, Duluth, for appellants.

Bruess, Hamerston, Bye & Boyd, Robert W. Boyd and R. Craft Dryer, Duluth, for Campbell.

Fryberger, Buchanan, Smith, Sanford & Frederick and John T. Oswald, Duluth, for No. City Nat'l Bank.

Heard before KELLY, YETKA and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

Petitioners commenced this action in district court to obtain construction of the will and trusts created thereunder of John Charles Campbell, Jr. Following entry of judgment in favor of respondents, Northern City National Bank of Duluth and Robert Noel Campbell, petitioners brought this appeal.

Testator John Charles Campbell, Jr. (JCC), drafted his will, which was later delivered to the bank and executed on May 22, 1959. A handwritten codicil was added May 27, 1963. This will provided a marital trust for testator's wife Irene and a residuary spendthrift trust for his three children, John Charles Campbell III (Jack), Mary Leda Campbell, and Robert Noel Campbell (RNC). The will became effective upon the death of JCC on July 16, 1963.

On February 5, 1953, a trust was created by RNC with Northern Minnesota National Bank of Duluth as trustee, the predecessor of Northern City National Bank, which is also trustee for the JCC testamentary trusts. RNC was designated "donor" of this trust, although the assets placed in the trust were those of JCC. Under Article I of the 1953 RNC trust agreement JCC retained control over the distribution of the trust income and principal. This trust was terminated in August 1974, and its assets were transferred to a new irrevocable trust created by RNC with Northern City National Bank as trustee.

This 1974 trust was established for the benefit and use of RNC, and for the support and maintenance of his family, which consists of his wife Janet and their seven children. RNC left his family in February 1974 and established residence in Arizona. The trustee of the 1974 trust has continued

to pay the trust proceeds to Janet and the children in Duluth.[1]

Janet and the children seek by this action to gain support from the JCC testamentary trusts and additional support from the 1974 RNC trust. The district court held that petitioners were not presently entitled to distributions from the JCC testamentary trusts, and further could not obtain an increase in the current level of distribution from the 1974 RNC trust.[2] Petitioners also sought to obtain attorneys fees from the JCC testamentary trusts. The district court denied recovery of fees.

We find the legal issues raised by this appeal to be the following:

(1) Are petitioners "beneficiaries" of a residuary trust created under the will of JCC?

(2) Does the trust provision for "support" of a beneficiary include the support of a beneficiary's wife and children?

(3) Does the word "debts" as used in the trust include the support of a beneficiary's wife and children?

(4) Did the district court improperly exclude parol evidence in construing the will of JCC?

(5) Does the doctrine of practical construction apply to this case?

(6) Is the spendthrift clause in the trust valid?

(7) Should the marital trust created for the benefit of Irene N. Campbell be terminated on the ground that it no longer serves a material purpose?

(8) Did the trustee of the 1974 RNC trust abuse its discretion in refusing additional distributions from the trust corpus?

(9) Did the district court abuse its discretion in refusing to award petitioners attorneys fees out of the corpus of the JCC trusts?

1. It is petitioners' contention that they are within the class of intended "beneficiaries" as that term is used in Article VI, paragraph (D) of the JCC will. This clause reads as follows:

"(D) In the event of prolonged illness, need of costly operation, or in the event the income paid any of the beneficiaries under any of the trusts created hereunder at any time should prove insufficient to properly meet said emergency, or should prove insufficient to properly maintain any of the beneficiaries or furnish them with a proper and suitable education, then in that event, my Trustees are hereby authorized at their discretion to advance from the principal of the trust estate such amounts as may be necessary to meet said emergency or to furnish proper support and education for said beneficiaries. In the event advances should be made to any beneficiary who takes under said trust as a class, then at the time of ultimate distribution of the principal of the trust estate, the share advanced to said beneficiary shall be charged to such beneficiary's share, but interest need not be computed thereon."

Careful examination of this clause together with other parts of the will clearly shows that petitioners are not within the class of intended beneficiaries.

First, the overall phrase refers to "income paid any of the beneficiaries." This implies that paragraph (D) only comes into effect when the income currently being paid to a trust beneficiary becomes insufficient to meet certain extraordinary needs. Yet it is admitted that petitioners are not currently being paid trust income, nor are they entitled to receive trust income. Paragraph (C) of the will specifically provides that the residuary trust income is to be paid by the trustees to JCC's children by his wife Irene, and can only be paid to issue of such children upon the death of the primary benefi-

---

1. Subsequent to the district court decision, RNC obtained a dissolution of marriage in Arizona. Janet did not appear in that action, but was granted alimony and child support in the amount of $600 per month.

2. The present level is $1,500 per month, the maximum allowed by the terms of that trust. Even this level requires invasion of the trust corpus, which apparently does not now exceed $76,000 in liquid assets.

ciary. Since RNC is still living, his children are not yet entitled to trust income, and by the language of paragraph (D) are therefore not entitled to invade the corpus for any reason.

Second, paragraph (D) states that the class entitled to its benefits is limited to "beneficiaries under any of the trusts created hereunder." Two trusts are created by the JCC will. Article V establishes a marital trust for Irene N. Campbell. Article VI, paragraph (C), establishes a residuary trust for the three Campbell children, Mary Leda, Jack, and Robert. The unambiguous class of trust beneficiaries therefore consists of Irene, Mary Leda, Jack, and Robert. The provision of paragraph (C) that upon the death of any of the three children his or her share passes to the issue of such child gives the issue only a contingent beneficiary status, since they cannot take until the death of the primary beneficiary.

Petitioners argue, however, that because paragraph (D) provides for the possibility of invasion of the corpus for a "proper and suitable education," it must refer to JCC's grandchildren. The evidence does establish that at the time of execution of the will in 1959 Jack Campbell was 28 years old and Robert was 26 years old, both having completed what education they intended to receive. This argument fails, however, in the case of Mary Leda Campbell. At the time of the execution of the will in 1959 she was only 19 years old, had completed 1 year of college, and had recently married. The record does not show that at this point she had foreclosed any possibility of further education. The will provides in Article VI, paragraph (B), that the trustees were to maintain JCC's homestead for Mary Leda "during her minority" as the "first charge" upon the residuary trust, indicating that JCC specifically had Mary Leda in mind, considering she was 7 years younger than Robert and 9 years younger than Jack. Finally, the "education" argument is defeated by the first sentence of paragraph (C), which establishes the residuary trust: "The remaining net annual income shall be expended by my Trustees for the support, maintenance and *education* of any children which I

may have as a result of my marriage to the said Irene N. Campbell." (Italics supplied.) Surely the use of the word "education" here and its use in paragraph (D) refer to the same class of individuals, namely, JCC's three children.

■ Considering these provisions together demands the conclusion that paragraph (D) was only intended to permit invasion of the trust corpus by the present income beneficiaries of the testamentary trusts, thus precluding the children of RNC from asserting a valid claim under this clause. Since this conclusion is reached based upon the terms of the will itself, consideration of extrinsic evidence is not permitted. *In re Trust Known as Great Northern Iron Ore Prop.*, Minn., 243 N.W.2d 302 (1976).

2. Petitioners' next claim is based upon the term "support" used in Article VI, paragraph (C), of the JCC will establishing the residuary trust: "The remaining net annual income shall be expended by my Trustees for the support, maintenance and education of any children which I may have as a result of my marriage to the said IRENE N. CAMPBELL." Petitioners quote 2 Scott, Trusts (3 ed.) § 128.4, p. 1024, as follows:

"*Support of the beneficiary's family.* Where a trust is created for the support of a beneficiary, and the beneficiary is a married man, the inference is that he is entitled to receive enough to support his wife and minor children also. The needs of a married man pertaining to support and maintenance may fairly be construed as including those of his family. In the absence of indication to the contrary, it is hardly to be deemed probable that a testator who provides for the support of a son intends at the same time to let his wife or children suffer for the necessities of life.'"

Petitioners conveniently end the quotation one sentence too soon, however. The concluding sentence of this section reads: "Whether his [beneficiary's] wife and children, if he refuses to support them, or if the

wife has secured a divorce with alimony, have claims which they can enforce against the trust estate is considered hereafter." The quoted section, which is under the general heading of "The Beneficiary," only states that the beneficiary himself is entitled to sufficient trust income or distribution to support both himself and his family.

Section 157.1, to which § 128.4 refers, considers in detail the status of dependents of the beneficiary of a spendthrift trust. The rule given is that "it has been held in a number of cases that [the beneficiary's] interest can be reached by his wife or children to enforce their claims against him for support." This presumes that the beneficiary has refused to support his family. In the present case, RNC established the 1974 trust for the support of his family, and has not so far contested distributions from that trust for his wife and children.

■■■ This court has previously rejected the possibility that a beneficiary's dependents can reach a spendthrift trust despite claims of public policy, until actually paid over to the beneficiary. In *Erickson v. Erickson,* 197 Minn. 71, 266 N.W. 161, rehearing denied, 267 N.W. 426 (1936), the plaintiff sought to have certain judgments and claims in her favor against her former husband for alimony and child support impressed as a lien on and paid out of his interest in a testamentary trust created by his father. The court denied the claim, noting that—

"* * * [t]o hold that the testator intended the trust to benefit the grandchildren would be a manifest perversion of his positive language, and there are no circumstances other than his relationship supporting any such implication. It seems clear to us that it was the testator's expressed intent not only to free the bequest from claims for alimony, but also for support money." 197 Minn. 77, 266 N.W. 164.

The legal conclusions reached in *Erickson* are as follows:

"When unrestrained by statute, it is the intent of the donor, not the character of the donee's obligation, which controls the availability and disposition of his gift. The donee's obligation to pay alimony or support money, paramount though it may be, should not, in our opinion, transcend the right of the donor to do as he pleases with his own property and to choose the object of his bounty. Our conclusion does not arise out of any anxiety for the protection of the beneficiary. In the absence of statute and within the limits as to perpetuities, a donor may dispose of his property as he sees fit, and this includes corpus or principal as well as income. * * * If alimony or support money is to be an exception to the protection offered by spendthrift provisions, it must be by some justifiable interpretation of the donor's language by which such implied exception may be fairly construed into the instrument of trust. It cannot logically arise out of the character of the obligation, though some cases so hold. The obligation for alimony and support money may be of higher rank than other debts, but it is nevertheless an obligation in the nature of a debt, and if, as here, no assignment could be made, if no title could reach the beneficiary until the actual receipt of the funds, then equity may not enforce claims of any nature against it. This court may not by imputing a constructive intent or by a constructive exception thwart the manifest purpose of the donor. The relationship of [the testator] to his grandchildren, standing alone, as it does here, is wholly insufficient, in our opinion, to justify the implications contended for by respondent. The words employed in his will make his purpose clear, and no interpretation can justify a construction that would subject either the principal or interest to claims for alimony or support money until it is actually paid to [the beneficiary]. Until he receives it he has no right other than an equitable one to enforce his rights under the trust, and this is not transferable either voluntarily or involuntarily. Neither the corpus nor the income becomes his to be reached by the court until actually distributed." 197 Minn. 78, 266 N.W. 164.

On its facts the present case is stronger than the *Erickson* case regarding the testator's intent to protect the residuary trust from claims of creditors or other nonbeneficiaries. Article VI, paragraph (G), provides:

"(G) Payments to all of the beneficiaries hereunder, excepting minors and persons under disability, shall be made only to such beneficiary or person or upon their personal receipt, and no interest of any beneficiary in the income or principal of the trust estate shall be assignable in anticipation of payment, either by the voluntary or involuntary act of such beneficiary, or by operation of law, or be liable in any way for such beneficiary's debts, including alimony."

This language makes clear the intent of JCC to allow distribution of trust assets only to the stated beneficiaries. Under *Erickson,* payment of support for the spouse and children of RNC cannot be made from the trust in the face of such an explicit limitation.

 The *Erickson* case and many other cases and authorities on the same point were considered in *In re Trust Created by Moulton,* 233 Minn. 286, 46 N.W.2d 667 (1951). Of the cases cited therein some followed the Minnesota rule, some were contrary, and others took an intermediate position by distinguishing between divorced and undivorced wives.[3] In *Moulton* we declined to overrule *Erickson* or to adopt an intermediate view:

"It is easy to see that the courts are hopelessly divided on this question. The cases pro and con are collected in Annotations, 35 A.L.R. 1035, 52 A.L.R. 1259, 104 A.L.R. 779.

"It is sufficient to say that the law on this subject is settled in this state and that, once it is established that a spendthrift trust exists, either by express provisions of the instrument or by implication, the beneficiary's interests can no more be reached in the hands of the trustee for alimony or support than for any other debt or obligation." 233 Minn. 301, 46 N.W.2d 675.

The principle established by *Erickson* and *Moulton* is that the intent of the testator controls where claims upon a spendthrift trust are made by nonbeneficiaries, even spouses or dependent children. The will of JCC makes unmistakable his intent that the residuary trust proceeds be paid only to his children and not be subject to claims for support by others. Under the rule in Minnesota, the phrase "support * * * of any children" in the will of JCC, viewed in light of Article VI, paragraph (G), must be held to bar claims of nonbeneficiaries to the trust income or corpus.[4] This bar extends to the beneficiary's spouse and children, and is not affected by extrinsic evidence regarding the testator's alleged affection for these claimants.

 3. For reasons expressed in the previous section, Article VI, paragraph (G), cannot be interpreted to allow claims upon the trust for support of the beneficiary's wife and children. This paragraph manifests in unambiguous language the intent of JCC to prevent claims upon the trust by nonbeneficiaries. Whether support of the spouse and children of the beneficiary is regarded as a "debt" or as "alimony and child support" is immaterial—the only relevant inquiry under *Erickson* and *Moulton* is whether the settlor intended claims for support to reach the trust directly. Paragraph

---

**3.** The intermediate cases held that the trust can be reached by undivorced wives but not by alimony claims. See, e.g., *Lippincott v. Lippincott,* 349 Pa. 501, 37 A.2d 741 (1944).

**4.** The recent case of *Smith v. Smith,* Minn., 253 N.W.2d 143 (1977), does not require a different result. That case also involved alimony-and-child-support claims against a spendthrift trust, but two factors distinguish it from the present case. First, the beneficiary of the trust signed a stipulation as part of the divorce proceeding assigning to his wife assets of the trust. Second, the beneficiary had a right to withdraw these assets at any time under the terms of the trust. In the present case, neither is true. RNC has not agreed in any way to allow distribution of the residuary trust assets to his wife and children, nor is he presently entitled to any portion of the residuary trust corpus by Article VI, paragraph (C), since he has not yet reached age 50.

(G) does not permit such an interpretation, and as concluded above, extrinsic evidence is not a factor in this inquiry.

4. The rules governing the use of extrinsic evidence in interpreting testamentary trusts are well established. These various rules can be summarized into a simple principle: Where the intent of the testator-settlor is clear from the language of the instrument, parol evidence is not admissible; where there is ambiguity as to the intent, parol evidence may be admitted for clarification. See, 19B Dunnell, Dig. (3 ed.) § 9888a; 20 Dunnell, Dig. (3 ed.) §§ 10257, 10260. As to the will herein, the district court found:

"That the language of the Last Will and Testament of John Charles Campbell Jr. is not ambiguous, and extrinsic evidence is not properly considered to vary the plain meaning of the language used in identifying the beneficiaries of such residuary trust."

The will of JCC was carefully drafted and contains no patent or latent ambiguities. The will establishes a marital trust for Irene and a residuary trust for JCC's three children, which contains a spendthrift provision and a provision preventing payment of trust assets to creditors. These specific terms do not require parol evidence regarding the testator's relationship to the various family members to make their meaning clear. Indeed, the record shows the testator to have been a man who said what he meant, and since he apparently drafted his own will, his words must be taken as his intention. Absent material ambiguities, extrinsic evidence may not be admitted to vary the plain meaning of the testator's words. *In re Trust Known as Great Northern Iron Ore Prop.*, Minn., 243 N.W.2d 302 (1976).

5. Petitioners correctly point out that the doctrine of practical construction has been extended to wills. *In re Trust Under Will of Koffend*, 218 Minn. 206, 15 N.W.2d 590 (1944). The following statement concerning this doctrine applied to trusts is found in *First and American National Bank v. Higgins*, 208 Minn. 295, 319, 293 N.W. 585, 597 (1940):

"The rule of practical construction is based upon the principle that the parties to an instrument may adopt their own interpretation of obscure or doubtful provisions and as between themselves render clear and certain what their language has left in ambiguity."

The present case is not appropriate for application of this contractual doctrine. Rather, we find persuasive the argument presented by respondents:

"The evidence presented in support of [petitioners'] argument shows no practical construction of the Last Will and Testament of JCC Jr. [Petitioners'] argument is based on the conduct of JCC Jr. and Respondent Robert N. Campbell in regard to an entirely distinct and different trust instrument, namely the trust agreement executed on February 5, 1953 by JCC Jr., RNC and Northern Minnesota National Bank of Duluth. RNC was the nominal Donor of this trust but the funding came from JCC Jr., who retained complete control over the time and manner of distributions from the trust. This inter vivos trust was created approximately 6 years before JCC Jr. executed his will. Upon the death of JCC Jr. the trusts created by his will were separate and distinct from the RNC [1953] inter vivos trust which continued after the death of JCC Jr. These were separate trusts created independently at different times by distinct instruments and assets. To suggest that the purpose of those trusts is identical is mere conjecture and to argue that the conduct of JCC Jr. or RNC under the 1953 trust conclusively shows what is intended under the testamentary trust is an erroneous use of the doctrine of practical construction."

The testamentary trust at issue herein came into being upon the death of JCC in 1963. Any conduct of the donor or beneficiaries prior to that time is clearly not relevant to the construction of the trust provisions. In addition, our prior cases state that the doctrine of practical construction applies only where the terms of the

instrument are ambiguous. *First and American National Bank v. Higgins, supra.* The terms of the will in this case are of sufficient clarity to make application of this doctrine inappropriate.

6. Petitioners in essence ask the court to overrule *Erickson v. Erickson, supra,* and *In re Trust Created by Moulton, supra,* and to hold as a matter of public policy that claims for family support by nonbeneficiaries should reach spendthrift trusts. As was stated in *Moulton,* "There is much respectable authority supporting appellants' contention in this respect." 233 Minn. 300, 46 N.W.2d 674. Nevertheless, we adhere to the reasoning of the *Erickson* case, and hold that claims of alimony and support are not an exception to the protection offered by spendthrift provisions. Such claims can be allowed only where the instrument of trust can be fairly be so construed. The unambiguous intent of the testator herein was to bar all claims by nonbeneficiaries, and under the rule of *Erickson* and *Moulton,* this precludes claims for alimony and support.

7. Irene Campbell has been left permanently incapacitated by a stroke in 1951. She is now in her late sixties, and lives in a nursing home where she receives constant care. Under the marital trust she holds a total estate valued at $1,100,000, of which over $250,000 is in a guardianship account. In January 1976 the annual income from this account was estimated to be $10,448, resulting in an overall trust income in excess of $30,000. Her established need is about $21,000 per year.

Petitioners conclude from these facts that the guardianship account is sufficient to provide for Irene Campbell's present and future needs, and that the marital trust should therefore be terminated. The district court found, to the contrary, that the purpose of the trust was to provide "continued care" for Irene, and that this purpose had not yet been accomplished. Article V, paragraph (A), of the will of JCC reads:

"(A) Said trust shall be held for the benefit of my said wife, IRENE N. CAMPBELL. My Trustees shall pay to her during her lifetime the entire income therefrom in convenient installments, at least quarter annually, and such portion of the principal as in the discretion of my Trustees is deemed necessary for the proper comfort, happiness and well-being of my said wife; and upon the death of my said wife, my Trustees shall thereupon transfer, set over and deliver the trust fund, as it shall then be constituted, unto those persons whom my wife shall appoint to take same in and by her Last Will and Testament, including the power in her to appoint the entire corpus to her estate, and to the extent of the failure of my said wife to exercise said power of appointment, the trust estate shall then be added to my residuary estate, and shall be disposed of as provided in Article VI hereunder."

The import of this language is that the trust is not to be subject to other claims during the lifetime of Irene. Presently the overall trust income exceeds her needs, but this could, of course, change in the future. The income from the guardianship account provides for only about ½ of Irene's current needs, meaning that the principal of that account would have to be expended to provide for her if the income from the corpus of the marital trust were not available. Although Irene suffered a stroke many years ago, it is possible that she could live for many more years, perhaps requiring increasing care as she grows older. Ten years of heavy medical expenses could deplete the guardianship account, and without the corpus of the trust Irene would be left penniless. Such a result would contravene the express intent of the will provision quoted above. The marital trust is therefore to be left intact, and will be distributed only upon the death of Irene Campbell.

8. Petitioners contend that the trustee of the 1974 RNC trust has abused its discretion in refusing additional distributions from the trust corpus. Article II of this trust states the purposes of the trust as being "for [RCN's] own use and benefit and for the support and maintenance of his wife

JANET S. CAMPBELL, and his issue in the event he is unable or fails to provide such support * * *." Article III, paragraph B, states in relevant part:

"B. In addition to the foregoing distributive provisions, and only in the event and for periods of time that the Donor fails during his lifetime to provide support and maintenance for the Donor's said wife, JANET S. CAMPBELL, and for the support, maintenance and education of the children of Donor and Donor's said wife, the Trustee shall distribute so much of the income and principal to such wife, subject to the limitations set forth in this subparagraph B, as it shall in its sole discretion deem necessary to support and maintain such wife and so much of the income and principal to such children subject to the limitations set forth in this subparagraph B, as it shall in its sole discretion deem necessary for the support, maintenance and education of the children of the Donor. It is the intent of this paragraph that the wife and said children of the Donor shall receive no more income or principal from this Trust than is necessary to satisfy the legal obligation of the Donor for support of said wife and said children of Donor. The Trustee has sole discretion as to the nature and extent of such legal obligation.

* * * * * *

"Notwithstanding the general power granted to the Trustee herein, the Trustee shall not distribute to said wife and children pursuant to this paragraph B, in any one (1) year, a sum in excess of $18,000.00, provided that the Trustee may increase such sum to reflect inflationary trends subsequent to the year ending December 31, 1973. Any such increase in such maximum sum due to inflationary trends shall be at the sole determination of the Trustee. Notwithstanding the limitations set forth above, the Trustee may distribute pursuant to this paragraph B, a sum in excess of $18,000.00 as adjusted, for inflation, in the event the Trustee in its sole discretion deems that an emergency exists which affects the health and

well-being of the beneficiaries of this paragraph B."

The trustee has disbursed $18,000 per year to petitioners, and has in addition disbursed sums for educational and medical expenses. If the trustee continues to distribute the funds at the same rate (which requires invasion of the corpus), the trust will be further depleted, and will be exhausted in 3 or 4 years. Petitioners seek an increase in the $18,000 per year distribution based on inflation, as expressly provided in Article III, quoted *supra*, and also seek further disbursements for other family expenses. Such additional disbursements would, of course, deplete the trust even more rapidly. The trustee refused to increase the $18,000 per year allowance, and has refused to make further "emergency" disbursements beyond those already mentioned. The district court concluded as follows:

"7. That the trustee of the Robert N. Campbell U/A 1974 has not abused its discretion in refusing to distribute to the Petitioners herein more than $1,500.00 per month plus such amounts as are necessary to satisfy extraordinary medical and educational expenses. That the trustee has not abused its discretion in refusing to make distributions necessary to enable Petitioners to enjoy a previous high and affluent life style as the preservation of the trust assets would be endangered. The trustee has shown a willingness to respond to the demonstrated level of need of the Petitioners. Accordingly this Court will not substitute its Judgment for that of the trustee."

Where, as here, a trustee is given broad discretion in disbursing the trust income and corpus, the rule is that the court will not substitute its discretion for that of the trustee except when necessary to prevent the abuse of discretion. *In re Trusts Under Will of McCann*, 212 Minn. 233, 3 N.W.2d 226 (1942); *In re Trusteeship Created Under Will of Ordean*, 195 Minn. 120, 261 N.W. 706 (1935). It follows that the judgment of the district court, which had before it all the facts regarding the trustee's use

of its powers, should not be questioned unless the record clearly shows it to be erroneous.

In this case no showing of abuse has been made. The record shows that the trustee of the 1974 RNC trust has paid out the maximum amount of $18,000 per year and has made additional disbursements for educational and medical expenses. The record does not reflect that the monthly family expenses exceed the current (tax free) support level of $1,500 per month. Mrs. Campbell's testimony was as follows:

"Q What do you do in terms of trying to survive on the amount that you're receiving from this Campbell Agreement? What does it mean in terms of your children? Are you supporting them? What's going on?

"A Well, their basic needs are met, of course. We have food and we have a house and we have clothing. So, I guess the style of living that they were accustomed to, especially the younger ones. They don't have that, now. Timothy is in great need of orthodontist care. And I cannot at this point take him even to be checked out because I still owe the orthodontist for my elder daughter's teeth. If the children want to go to camp, they have to go out and work their own way to get it. I cannot help them.

"Q Do you find, necessarily, that you make I suppose personal sacrifices that a mother would make in order to deprive yourself for their welfare?

"A Well, they come first, of course."

Further, the record shows the trustee willing to meet extraordinary medical expenses not payable from the monthly allowance. To increase the monthly allowance where need does not warrant, and thereby further invade the trust corpus, may well result in an abuse of the trustee's discretion. See, *In re Trust Created by Watland*, 211 Minn. 84, 300 N.W. 195 (1941). In view of the fact that the 1974 RNC trust is fast being depleted, the trustee is justified in attempting to hold the line on disbursements when it does not appear that increases are necessary to meet basic needs. The district court noted in its memorandum:

"* * * The purpose of the Robert N. Campbell Trust U/A 1974 is to provide support for the Petitioners. There is no evidence that the Petitioners need for support from the trust will soon end, and the trustee may properly consider the need to preserve the trust assets for the future support of Petitioners. The evidence shows that the trustee is distributing to the Petitioners $1,500.00 per month for their support, that the trustee has paid substantial extraordinary medical expenses incurred by Petitioner, that the trustee stands ready to make additional distributions from the trust upon a showing of need, and that the trust corpus will be depleted in less than five years at the current rate of distribution. No present abuse of discretion has been shown."

We find this conclusion fully warranted by the evidence, and in any event it is not clearly erroneous. The trustee may therefore continue the present level of distribution, but may exercise its discretion to increase or decrease this amount as the needs of the family indicate.

9. The district court denied attorneys fees to petitioners without explanation. Petitioners sought to have attorneys fees paid out of the trust fund corpus on the theory that they had conferred a benefit upon the trust. Both petitioners and respondents cite *In re Living Trust Created by Atwood*, 227 Minn. 495, 35 N.W.2d 736 (1949), as controlling on this issue. The following excerpts from *Atwood* illustrate the criteria established:

"* * * The applicable rule may be thus summarized: In the sound and cautiously exercised discretion of the court, and not as a matter of right, attorneys' fees and other expenses reasonably and necessarily incurred by all necessary parties to litigation may be allowed and properly charged to the trust estate where such litigation, with respect to substantial and material issues, is necessary

in order to resolve the meaning and legal effect of ambiguous language used by the settlor in the trust instrument, if an adjudication thereof is essential to a proper administration of the trust, and if, without unnecessary expense or delay, the litigation is conducted in good faith for the primary benefit of the trust as a whole.

\* \* \* \* \* \*

"A reasonable allowance for counsel fees to be paid out of the trust corpus may be made to necessary parties to a proceeding for the construction of ambiguous trust provisions, regardless of whether their interests are promoted or defeated by the final result. Obviously, the necessary parties will have divergent views as to the legal effect of the trust instrument; otherwise there would be no need for a judicial construction. Under such circumstances, a bona fide clash of divergent views, coupled with the production of evidence and a presentation of oral and written argument pro and con, is of great value to any genuine adjudication and is of benefit to the entire trust, although the court may not completely adopt the views of any party. The value of counsel's services rendered in good faith is not to be measured in terms of the success or nonsuccess of any necessary party." 227 Minn. 501, 35 N.W.2d 740.

■ Although *Atwood* makes clear that a simple loss on the merits does not bar allowance of attorneys fees, it also holds that the trust instruments in dispute must be sufficiently ambiguous to require litigation to establish their meaning and effect. Since we have found, along with the district court, that the trust instruments herein were not ambiguous, and therefore did not require litigation to permit proper administration, allowance of attorneys fees is not appropriate. The courts as well as the trustees have a responsibility to protect trusts from dissipation by the costs of extended litigation. Parties who seek to gain from trusts not established primarily for their benefit must bear some risk should they be entirely unsuccessful. In this case, both the trustees and the beneficiary of the JCC trust were respondents to the petition, neither having alleged any confusion or ambiguity regarding the terms of the trust or the proper method of its administration. To allow recovery of attorneys fees in this case would permit invasion of the trust corpus for a wholly unwarranted purpose, where the litigation has conferred no benefit on the trust. The decision in *Atwood* did not envision recovery of fees under these circumstances.

■ In essence, petitioners attempt to show that JCC intended to bestow the benefits of his estate upon them, but did not express this intention in his will. The court has held this approach unacceptable. *In re Trust Created by Will of Silverson*, 214 Minn. 313, 8 N.W.2d 21 (1943). The primary function of the court in exercising jurisdiction over trusts is to preserve them and to secure their administration according to their terms. *In re Trust Under Will of Cosgrave*, 225 Minn. 443, 31 N.W.2d 20, 30 (1948). As indicated above, further proceedings incident to the dissolution of the parties' marriage may provide a more proper avenue for legal redress.

Affirmed.

KELLY, Justice (concurring specially).

I concur with the majority opinion except as to that portion which asserts that *In re Living Trust Created by Atwood*, 227 Minn. 495, 35 N.W.2d 736 (1949) holds that the trust instruments in dispute must be sufficiently ambiguous to require litigation to establish their meaning and effect before an allowance of attorney fees may be made. I do not read the holdings in *Atwood* that narrowly. First of all, in *Atwood* there were ambiguities and the holding merely is that where there are ambiguities attorneys fees may be allowed if other appropriate circumstances are present. *Atwood* does not say that ambiguities must be present before attorneys fees may be allowed. The better rule should be broader than that proposed in the majority opinion. Even without ambiguities, if the legal effect of

language used in a trust instrument is in reasonable doubt with respect to substantial and material issues, then in the discretion of the court attorneys fees may be allowed. The litigation should be conducted in good faith for the primary benefit of the trust as a whole and the adjudication to be obtained should be essential to the proper administration of the trust. In the instant case I agree with the result—that is, affirming the trial court's denial of attorneys fees as being within that court's discretion—although I would also have affirmed a modest allowance of attorneys fees if they had been awarded.