In the Matter of the Mary O. FOLEY
TRUST created under Agreement
dated August 22, 1974.

No. A03–43.

Court of Appeals of Minnesota.

Nov. 18, 2003.

Mary R. Vasaly, Jason A. Lien, Maslon, Edelman, Borman & Brand, LLP, Minneapolis, for appellants.

Harold R. Fotsch, Fotsch & Otto, P.A., St. Paul, for respondents U.S. Bank and Sister Mary Denise Villaume.

Philip R. Schenkenberg, Briggs & Morgan, P.A., St. Paul, for respondent Janet Villaume.

Considered and decided by WRIGHT, Presiding Judge; TOUSSAINT, Chief Judge; and G. BARRY ANDERSON, Judge.

## OPINION

WRIGHT, Judge.

On appeal from an order construing a trust and an order denying a motion for a new trial, appellants contend that the district court erred in considering extrinsic evidence to construe the trust and in reforming earlier transactions in the trust. We affirm as modified.

## FACTS

Mary O. Foley established the Mary O. Foley Trust (Foley trust) in 1974 to provide for her heirs upon her death. The trust agreement provided that the trustees could make distributions from the trust at the direction of Foley unless she was un-

der an incapacity. In the event of Foley's incapacity, the trustees were authorized only to make payments from the trust for her maintenance, care, and support. In addition to the Foley trust, Foley had created a trust for her daughter, Janet Villaume, in 1966 to provide for Janet Villaume's care and support because Janet Villaume was unable to provide for herself.

At Foley's death, the trust assets were to be distributed in four parts to her children or their heirs if her children predeceased her. Mary Foley had four children: Mary Denise Villaume, Janet Villaume, Eugene Villaume, and Walter Villaume. Her two sons predeceased her and each is survived by three children. These six grandchildren are the appellants here. The trust also provided that certain pre-death gifts were to be considered advances on the final distribution. These included Foley's gifts to her two sons of $107,500 each, and the value of Janet Villaume's 1966 trust at the time of Foley's death.

The trustees of the Foley trust during the relevant time period were U.S. Bank and Sister Mary Denise Villaume. In spring 2000, the grandchildren approached U.S. Bank to discuss whether they could receive pre-death gifts from the Foley trust to minimize taxes the Foley trust would otherwise incur upon a forced sale of certain stock. The bank's administrator for the trust met with Foley to discuss the gifts. The administrator concluded that Foley, who was 92 years old, lacked the capacity to direct the trustees to make the gifts. Instead, the trustees and the grandchildren decided to make the gifts from the Foley trust. The beneficiaries, including Janet Villaume, Sister Mary Denise Villaume, and all of the grandchildren, signed an agreement consenting to the gifts. The trustees then transferred funds from the Foley trust as follows:

- $225,000 divided among the three children of Eugene Villaume.
- $225,000 divided among the three children of Walter Villaume.
- $225,000 to be directed by Sister Mary Denise Villaume, who was a nun and had taken a vow of poverty, to a charity of her choice.
- $225,000 to Janet Villaume, which was distributed to her 1966 trust.

Mary Foley died on October 23, 2000, shortly after the 2000 gifts were made. In a petition dated February 27, 2001, the trustees sought allowance and approval of accounts, distribution of the Foley trust assets, and termination of the trust. In its April 11, 2001, order, the district court allowed the accounts, confirmed the distribution of the assets, and terminated the trust.

A question arose later as to how the 2000 gifts should be treated in the final distribution of the trust assets. In a November 29, 2001, petition, the trustees sought construction of the Foley trust, division of assets, and distribution of the Foley trust shares. The trustees noted that, under the Foley trust agreement, the gift to Janet Villaume would be counted against her share of the trust, but the gifts to the grandchildren would not reduce the shares to which they are entitled. Settlement talks commenced. When the matter could not be settled, it was set for a hearing. In March 2002, the trustees moved to amend the petition to raise explicitly the validity of the beneficiaries' consent to the 2000 gifts and, if found invalid, to seek instructions on how to distribute the trust's assets. The district court denied the motion as unnecessary, ruling that the November petition "set forth the issues to be determined."

At the hearing on the petition, the grandchildren objected to the introduction of extrinsic evidence. The district court

overruled the objection, and extrinsic evidence was introduced. After the hearing, the district court ruled that, although the 2000 gifts were not authorized by the trust, it declined to void them because of the tax benefits to the trust that the transaction produced. The district court, however, found that the transaction was unfair to Janet Villaume because the distribution to her 1966 trust would have been $57,000 greater had the gift transaction not occurred. The district court remedied this unfairness first by reforming the gift so that it went to the February 14, 2002, Janet Villaume revocable trust rather than her 1966 trust. Second, the district court ordered the trustees to recalculate the value of Janet Villaume's 1966 trust at the time of Foley's death and redistribute the residue of the Foley trust without consideration of the 2000 gift. The district court denied the grandchildren's posttrial motions, and this appeal followed. Respondent trustees advised this court that they are neutral parties in the appeal and did not file a brief.

## ISSUES

I. Did the district court err in considering extrinsic evidence in resolving the issues raised in the petition for construction?

II. Did the district court abuse its discretion in reforming the gift?

## ANALYSIS

We "review a district court's construction of an unambiguous instrument de novo." *In re Estate and Trust of Anderson,* 654 N.W.2d 682, 687 (Minn.App. 2002), *review denied* (Minn. Feb. 26, 2003). "The application of the parol evidence rule is [also] a question of law subject to de novo review." *Mollico v. Mollico,* 628 N.W.2d 637, 640 (Minn.App.2001). But when the district court makes findings based on disputed evidence, we review those findings under a clearly erroneous standard. *Toombs v. Daniels,* 361 N.W.2d 801, 805 (Minn.1985). Absent an abuse of discretion, we will not reverse the district court's decisions in its exercise of equitable jurisdiction pursuant to a petition under Minn.Stat. § 501B.16(4). *See Plunkett v. Lampert,* 231 Minn. 484, 492, 43 N.W.2d 489, 494 (1950); *First Trust Co., Inc. v. Union Depot Place Ltd. P'ship,* 476 N.W.2d 178, 184 (Minn.App.1991), *review denied* (Minn. Dec. 13, 1991).

### I.

A trustee may petition the district court for an order "to construe, interpret, or reform the terms of a trust, or authorize a deviation from the terms of a trust...." Minn.Stat. § 501B.16(4) (2002). "The primary function of the court in exercising jurisdiction over trusts is to preserve them and to secure their administration according to their terms." *In re Trusts of Campbell,* 258 N.W.2d 856, 868 (Minn.1977). The district court has supervisory control over the trust and protects the trustee when "the meaning of the trust instrument may be in doubt or ... where there was uncertainty as to the proper application of the law." *In re Trust of Warner,* 275 Minn. 174, 179–80, 145 N.W.2d 542, 546 (1966). "The court's purpose in construing a trust is to ascertain the intent of the settlor." *In re Trust Created Under Agreement with McLaughlin,* 361 N.W.2d 43, 44 (Minn.1985). On a petition for construction, the district court shall issue an order as it considers appropriate. Minn.Stat. § 501B.21 (2002).

The grandchildren assert that the district court erred in considering extrinsic evidence in construing the trust language. But their argument is premised on their underlying claim that the issue properly before the district court was whether, un-

der the Foley trust agreement, the 2000 gift to the 1966 Janet Villaume trust should be considered in calculating the amounts of the final distribution. They assert that the district court, in reaching the validity of the 2000 gifts, misconstrued its earlier order denying the trustees' motion to amend its petition and misinterpreted the scope of the hearing. The grandchildren contend that consideration of the validity of the 2000 gifts was highly prejudicial and, had they known it was at issue, they would have submitted additional evidence.

■ "It is fundamental that a party must have notice of a claim against him and an opportunity to oppose it before a binding adverse judgment may be rendered." *Folk v. Home Mut. Ins. Co.*, 336 N.W.2d 265, 267 (Minn.1983). Thus, we begin our analysis with a determination of whether the validity of the 2000 gifts was properly before the district court.

In the November 29, 2001, petition for construction of the trust, the trustees, among other things, described the details of the 2000 gifts to the beneficiaries and explained that, under the terms of the Foley trust, the gift to Janet Villaume's 1966 trust would be credited against her share of the final distribution, while the gifts to the grandchildren would not reduce their shares. The petition then stated:

> Pursuant to Minn.Stat. § 501B.16(4), Petitioners seek the construction of the governing trust instrument as to whether the gift made by the Settlor to the Janet M. Villaume Trust immediately prior to Settlor's death should be taken into account in determining the amount to pass to the Janet M. Villaume Trust.

The relief the trustees sought included, in relevant part, an order "[i]nstructing the trustees as to the division of the trust assets among the beneficiaries thereof."

In the proposed amended petition, the trustees specifically sought a determination as to whether the consent to receive the 2000 gifts that the beneficiaries had signed was valid. If not, the trustees sought instructions from the district court as to how to proceed with the distribution of the Foley trust estate. The district court, however, denied the motion to amend the petition as unnecessary, noting that the proposed amendments were "designed to seek instructions from the court to determine that certain agreements are valid and for other relief" and concluding that the "original [p]etition before this [c]ourt set forth the issues to be determined." The district court reasoned that the proposed amendment to the petition appeared to be designed to give the parties additional time for discovery and settlement negotiations.

At the hearing, the parties and the district court addressed which issues were before the court. The trustees asserted that the only contested issue was "the intent of the settlor ... as to gifts made by her to her daughter Janet Villaume and her grandchildren shortly before her death." The grandchildren objected to consideration of any extrinsic evidence as to the circumstances of the 2000 gifts. The district court overruled the objection, holding that all of the facts would be considered. On review, based on the petition, the district court's order denying the motion for the amended petition, and its rulings at the commencement of the hearing, it is clear that the issue of the validity of the 2000 gifts was properly before the district court and the grandchildren had notice that this issue would be decided.

■ We next consider whether the district court properly considered extrinsic evidence to address the validity of the 2000 gifts. "Where the intent of the testator-

settlor is clear from the language of the instrument, parol evidence is not admissible; where there is ambiguity as to the intent, parol evidence may be admitted for clarification." *Campbell*, 258 N.W.2d at 864. Whether consideration of parol evidence is proper is a question of law subject to de novo review. *Mollico*, 628 N.W.2d at 640. As discussed above, the issue before the district court was not merely interpretation of the trust language. Rather, it was an assessment of the validity of the 2000 gifts. Because the 2000 gifts were not contemplated by the trust agreement, sufficient ambiguity exists as to Foley's intent under these unforeseen circumstances so as to make consideration of extrinsic evidence proper. Accordingly, the district court did not err in considering extrinsic evidence.

## II.

We next consider the grandchildren's challenges to the district court's reformation of the 2000 gift to Janet Villaume. The district court concluded that the distribution of the 2000 gifts was not authorized by the Foley trust or otherwise. Under the terms of the Foley trust, Foley could direct distribution of the trust assets unless she was under an incapacity. The trustees determined, and the grandchildren do not dispute, that when the gifts were proposed, Foley was under an incapacity and unable to direct distributions. The grandchildren argue that the gifts were consistent with the distribution plan articulated in the trust. But they do not cite trust language authorizing the transaction. The trust agreement provides that, in the event of Foley's incapacity, the trustees are authorized only to make distributions for Foley's maintenance, care, and support. Thus, we agree with the district court's conclusion that the unambiguous trust language contains no authorization for the 2000 gifts. Therefore, we

must determine whether the gifts were otherwise authorized.

The trustees could have sought the district court's approval for this distribution under Minn.Stat. § 501B.16(4), but they did not do so. Although Sister Mary Denise Villaume had power of attorney for Foley, she did not use it to direct the gifts. Thus, as the district court concluded, there was no authority under the Foley trust or otherwise for the gifts.

The grandchildren contend that the gifts were valid because the beneficiaries consented. The district court found that Janet Villaume was not involved in the decision-making process as to the gifts, she was not represented by counsel as the others were, and she believed she was being treated like the others when she signed the consent form. Further, the district court found that the grandchildren did not intend to treat Janet Villaume unfairly. A review of the record establishes that the district court's findings are not clearly erroneous.

In addition, we consider whether there is legal authority for the proposition that the beneficiaries can consent to these gifts. Under Minnesota law, it is the responsibility of the courts to construe, interpret, or reform the terms of a trust. Minn.Stat. § 501B.16(4). In exercising its jurisdiction over trusts, the district court utilizes its supervisory power to protect the trustees in situations where interpretation of trust terms are in doubt or uncertain. *Warner*, 275 Minn. at 179–80, 145 N.W.2d at 546. Granting beneficiaries power to consent to gifts from a trust that are not authorized by the trust agreement would be inconsistent with statutory authority and legal precedent giving the courts supervisory power over trusts. *See* Minn.Stat. § 501B.16(4); *Warner*, 275 Minn. at 179–80, 145 N.W.2d at 546. Consequently,

there is no legal authority to support the grandchildren's argument that the beneficiaries may consent to these gifts.

■ The grandchildren also challenge the district court's remedy of reformation. The district court found, and the parties do not dispute, that the Foley trust saved $400,000 in taxes by the pre-death distribution of the trust assets to the beneficiaries. It is also undisputed that the final distribution of the Foley trust's assets to Janet Villaume's 1966 trust would have been $57,000 greater without the pre-death gift, because the Foley trust provided that the value of the 1966 Janet Villaume trust was to be credited against Janet Villaume's final share of the Foley trust.

■ Despite this unfairness, the district court determined that the tax benefits to the Foley trust derived from the 2000 gifts warranted preservation of the gifts. Thus, to remedy the unfair effect of the 2000 gifts, the district court ruled that the $225,000 gift to the 1966 Janet Villaume trust would not be credited against Janet Villaume's share of the Foley trust. The grandchildren contend that, by doing so, the district court provided full relief under the petition for construction. They also assert correctly that the decision not to credit the 2000 gift against Janet Villaume's share is contrary to the express terms of the Foley trust. But a district court may use its equitable powers to address the trustee's request for construction and will not be reversed absent an abuse of discretion. *Plunkett,* 231 Minn. at 492, 43 N.W.2d at 494. Here, the district court, faced with an unfair result from an unauthorized transaction, employed its equitable powers to remedy the situation. Under the facts and circumstances presented, we find no abuse of discretion.

■ Finally, we review the grandchildren's challenge to the district court's decision directing the trustees to distribute the $225,000 gift to the February 14, 2002, revocable trust for Janet Villaume, rather than the 1966 trust into which the Foley trust agreement directed that all distributions from the Foley trust on behalf of Janet Villaume must be placed. The grandchildren argue that this was error because the Foley trust and the 1966 Janet Villaume trust prohibit Janet Villaume from controlling the distribution of her 1966 trust funds. They also argue for reversal of the decision because it orders an unauthorized distribution of the Foley trust assets to the 2002 Janet Villaume revocable trust, which (1) is not a beneficiary of the Foley trust and (2) unlike the 1966 trust, does not direct its assets to be distributed to the grandchildren after Janet Villaume's death.

As an initial matter, we note that there is nothing in the record setting out the terms of the 2002 Janet Villaume revocable trust, including the terms and conditions of Janet Villaume's use of its assets and whether the grandchildren are beneficiaries upon Janet Villaume's death. Consequently, we cannot decide the issue on the basis of arguments regarding the nature of the 2002 trust. But the grandchildren's claims regarding distribution of the Foley trust assets to a beneficiary that was not designated by the Foley trust agreement have merit. The Foley trust agreement provides that distributions on behalf of Janet Villaume are to be distributed to her 1966 trust. In exercising jurisdiction over trusts, the district court's purposes are to ascertain and effectuate the intent of the settlor. *See McLaughlin,* 361 N.W.2d at 44; *Campbell,* 258 N.W.2d at 868. Because the trust agreement clearly establishes that it was Foley's intent that distributions on Janet Villaume's behalf be made to her 1966 trust, it was an abuse of discretion for the district court to order that the 2000 gift to Janet Villaume be

placed in her 2002 trust. We, therefore, modify the district court's order and direct the trustees to distribute the 2000 gift to the 1966 Janet Villaume trust without crediting the 2000 gift against Janet Villaume's share of the Foley trust.

## DECISION

The district court properly considered extrinsic evidence to determine the validity of the 2000 gifts. The district court correctly ruled that the 2000 gifts were unauthorized by the Foley trust, and the district court was within its discretion to remedy the unfair result to Janet Villaume by ordering a recalculation of the Foley trust distribution without consideration of her 2000 gift. But we hold that it was an abuse of discretion for the district court to order the 2000 gift to be placed in a trust other than the 1966 trust to which the Foley trust agreement requires all of the Foley trust distributions on behalf of Janet Villaume to be made.

**Affirmed as modified.**