In re the G.B. VAN DUSEN MARITAL TRUST under the Grosvenor B. Van Dusen Revocable Trust Agreement dated December 17, 1981, as amended.

Nos. A12–0503, A12–0994, A12–1469.

Court of Appeals of Minnesota.

April 8, 2013.

Review Denied June 26, 2013.

Kay Nord Hunt, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN; and Luther M. Amundson, Maser Amundson, P.A., Minneapolis, MN, for appellant Virginia Van Dusen.

Thomas H. Boyd, Kristopher D. Lee, Winthrop & Weinstine, P.A., Minneapolis, MN, for respondent Lowry Hill n/k/a Abbot Downing, a Division of Wells Fargo Bank, N.A.

Alan I. Silver, Robin Ann Williams, Bassford Remele, P.A., Minneapolis, MN; and Andrea S. Breckner, Olson & Breckner, P.A., Minneapolis, MN, for respondents Grosvenor B. Van Dusen, Jr., Randi Thekan, Sally Van Dusen, Nathan Van Dusen, and Stephen Van Dusen.

Considered and decided by JOHNSON, Chief Judge; WORKE, Judge; and SCHELLHAS, Judge.

## OPINION

JOHNSON, Chief Judge.

This appeal concerns the terms of a trust that was created to provide for the grantor's wife after his death. Since the grantor's death, his widow has received all income produced by the trust and limited distributions of trust principal. The trustee has denied her requests for additional distributions of principal. In addition, the trustee has denied her requests to convert non-income-producing property to income-producing property.

In this action to determine the propriety of the trustee's actions, the district court granted summary judgment to the trustee. We conclude that the district court erred by granting summary judgment to the trustee on the issues of the widow's entitlement to additional distributions of principal and her right to convert non-income-producing property to income-producing property. We also conclude that the district court erred in its rulings on the parties' requests for attorney fees and costs. Therefore, we reverse and remand for further proceedings.

## FACTS

Grosvenor B. (G.B.) Van Dusen and Virginia Van Dusen were married in 1978. Each had four adult children from previous marriages; they had no children together. G.B. died in 1999.

In 1981, G.B. created the Grosvenor B. Van Dusen Revocable Trust by entering into a trust agreement with Norwest Bank, the predecessor of Wells Fargo Bank, N.A., of which respondent Lowry Hill is a division. He amended the trust agreement in 1986, 1987, 1991, and 1992. The 1992 trust agreement supersedes all prior agreements. G.B. named himself and the bank as trustees. Upon G.B.'s death, a successor co-trustee was appointed but died shortly thereafter. A second successor co-trustee was appointed and served until he resigned in 2001, at which time Lowry Hill became the sole trustee.

The trust agreement provides that, during G.B.'s lifetime, the trustees were required to pay him income as requested. The trust agreement further provides that, after G.B.'s death, if Virginia survives him, the trust assets shall be allocated to three different trusts: the Generation Skipping Trust, the Marital Trust, and the Family Trust. The Generation Skipping Trust was to receive "an amount equal to Grantor's unused generation skipping transfer tax exemption at the date of his death." The Marital Trust was to receive the remainder of the trust estate. The Family Trust was to receive "any portion of the Marital Share disclaimed by [Virginia]" and any remaining assets of the Marital Trust after Virginia's death. The Family Trust is to be administered after Virginia's death, and will be divided into four equal parts, three parts for the benefit of three of G.B.'s children from his prior marriage and one part for the two children of a predeceased son. G.B.'s three children and the two grandchildren are respondents in this appeal and have designated themselves as "remainder beneficiaries" of the Marital Trust. Because there has been no objection to their self-designation, we will refer to them as such for purposes of this opinion.

When G.B. died in 1999, the Marital Trust was funded with approximately $3,500,000 in principal. Article V of the trust agreement provides for income and principal distributions from the Marital Trust to Virginia as follows:

A. The Trustees, from the date of the Grantor's death, shall pay the income to [Virginia] in convenient installments, but at least quarter annually, during her life.

B. The Trustees may distribute to [Virginia] or apply for her benefit as much of the principal as the Trustees deem advisable to provide for her health, education, support, maintenance and care. In making this determination, the trustee shall have no obligation to consider other assets or income available to [Virginia]. The Grantor intends that the Trustees use principal liberally for [Virginia] to enable her to maintain insofar as possible the standard of living to which she was accustomed during the Grantor's lifetime.

The trust agreement also gives Virginia the right to convert unproductive property to productive property:

C. If any unproductive property is held by the Trustees in the Marital Trust, [Virginia], at any time, by written instrument to the Trustees, may compel conversion of such unproductive property to productive property, it being the Grantor's intention that [Virginia] shall have the full beneficial enjoyment of the Marital Trust.

Virginia presently receives income from five different trusts, including the Marital Trust established by G.B. She also receives G.B.'s pension benefits and social security benefits. Virginia contends that, before his death, G.B. expected that she would receive income of approximately $166,000 per year from the Marital Trust and more than $200,000 per year from all trusts. But Virginia consistently has received less than $100,000 in income from the Marital Trust and only once has received income of more than $200,000 per year from all trusts. Between 2000 and 2011, Virginia received an average of approximately $93,000 per year in income distributions from the Marital Trust. During the same period, Virginia received no principal distributions in some years and varying amounts of principal distribu-

tions in other years: $6,507 in 2002; $6,467 in 2005; $16,528 in 2006; $17,811 in 2007; $60,019 in 2008; $49,204 in 2009; $23,404 in 2010; and $73,771 in 2011.

Since G.B.'s death, Lowry Hill has served as trustee for all of the trusts to which Virginia is a beneficiary and has assisted Virginia in managing her personal finances. Virginia and Lowry Hill appeared to enjoy a good relationship until approximately 2009, when the relationship became strained for a variety of reasons. It was discovered in 2009 that Lowry Hill had mistakenly failed to make an approved principal distribution of approximately $49,000 in 2001. Lowry Hill did not make the distribution until May 2011, at the request of Virginia's attorney.

In addition, Virginia and Lowry Hill had conflicting views on her entitlement to principal distributions from the Marital Trust. During the same time period, Virginia expressed her desire for larger distributions of principal than she had requested in the previous decade. In March and May 2010, she requested principal distributions totaling approximately $62,850. She sought the funds to pay various living expenses and attorney fees, which she previously had paid from Marital Trust income and other income sources. In response, Lowry Hill asked for a meeting with Virginia to determine whether the requested distributions were due to changes in her financial situation. Virginia declined to meet with the trustee unless certain conditions were met. The trustee denied the entire $62,850 request based on information regarding Virginia's other sources of income and her expenses, "the fact that [Virginia] has had sufficient income to pay her living expenses in the past and has not previously sought discretionary distributions of principal from the Trust to pay these expenses," and "the absence of information indicating that

there have been any material changes with respect to [Virginia's] financial circumstances and/or needs." In addition, in June and July 2011, while this case was pending in the district court, Virginia made five more requests for principal distributions, totaling more than $300,000. The trustee denied three of those requests; the appellate record does not reflect any action on the other two requests.

In May 2011, Virginia requested that Lowry Hill convert all non-income-producing property to income-producing property, pursuant to article V, paragraph B, of the trust agreement. Lowry Hill responded that Virginia did not have the right to require that all assets invested in non-income-bearing investments be converted to "100% income producing investments." Lowry Hill explained that some non-income-producing assets are " 'productive property' because they have the 'productive' characteristic of growing principal in the Trust and the potential for yielding the benefits that come from such growth." Lowry Hill thus rejected Virginia's request. The district court did not receive evidence concerning the diminution in income due to the trust's investments in non-income-producing property. But the trust's financial records indicate that, as of April 2009, approximately $1,336,376 (47% of the trust's assets) was invested in equities, real estate investment trusts, and limited partnerships. Of that amount, approximately $445,722 (33% of those assets, or 16% of the trust's total assets) was invested in assets that were not expected to produce income.

In June 2010, Lowry Hill petitioned the district court for confirmation of its denials of the March and May 2010 principal requests and for instructions concerning the interpretation of the Marital Trust. Virginia objected to the trustee's petition and filed her own petition for court supervision of the Marital Trust and for removal of the trustee. The district court consolidated the two cases.

In October 2010, the district court heard cross-motions for summary judgment filed by Virginia and by Lowry Hill and the remainder beneficiaries. In December 2010, the district court granted Lowry Hill's motion in part, concluding that the trustee is permitted to consider Virginia's other sources of income when determining whether to make requested distributions of principal. The district court denied the remainder of Lowry Hill's motion and Virginia's motion because of the existence of disputed questions of fact.

The parties conducted additional discovery. In October 2011, the district court heard a second set of cross-motions for summary judgment. The district court denied Virginia's motion in its entirety and granted Lowry Hill's motion in its entirety. The district court concluded that Lowry Hill was justified in denying Virginia's requests for distributions of principal and further concluded that Virginia is not entitled to direct the trustee to convert non-income-producing assets to income-producing assets. The district court also determined that Lowry Hill and the remainder beneficiaries are entitled to reimbursement of reasonable trustee fees and attorney fees and costs. In June 2012, the district court denied in part Virginia's requests for attorney fees and costs.

Virginia filed notices of appeal from the district court's entry of summary judgment and the district court's orders with respect to attorney fees and costs. We consolidated the appeals.

## ISSUES

I. Did the district court err by concluding that the trustee is not required to make additional distributions of principal to Virginia?

II. Did the district court err by determining that Virginia does not have the right to compel the trustee to convert non-income-producing property to income-producing property?

III. Did the district court err in its rulings on the parties' requests for attorney fees and costs?

## ANALYSIS

A district court must grant a motion for summary judgment if the evidence demonstrates "that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the non-moving party. *Frieler v. Carlson Mktg. Grp., Inc.,* 751 N.W.2d 558, 564 (Minn.2008). This court applies a *de novo* standard of review to a summary judgment ruling and views the evidence in the light most favorable to the non-moving party. *RAM Mut. Ins. Co. v. Rohde,* 820 N.W.2d 1, 6 (Minn.2012).

### I.

Virginia argues that the district court erred by granting summary judgment to Lowry Hill on the question whether she is entitled to additional distributions of principal.

■■■ A grantor "may dispose of his property as he sees fit, and this includes corpus or principal as well as income." *In re Campbell's Trusts,* 258 N.W.2d 856, 862 (Minn.1977) (quotation omitted). A court's purpose in interpreting a trust agreement is to "ascertain and give effect to the grantor's intent." *In re Stisser Grantor Trust,* 818 N.W.2d 495, 502 (Minn.2012). A court should seek out the grantor's dominant intention by construing the trust agreement in its entirety. *Id.* If the trust agreement is unambiguous, a court should look to the language of the agreement to discern the grantor's intent and not consider extrinsic evidence. *Id.* A court may not "thwart the manifest purpose" of the grantor by "imputing a constructive intent" on the trust agreement. *Campbell's Trusts,* 258 N.W.2d at 862 (quotation omitted). This court applies a *de novo* standard of review to a district court's interpretation of a trust agreement. *Stisser,* 818 N.W.2d at 502.

Virginia's first argument is based primarily on three specific contentions. First, she contends that the district court erred by providing the trustee with too much discretion to deny her requests for principal distributions. Second, she contends that the district court erred by requiring her to justify an increase in her current standard of living, rather than assuring her the standard of living that existed during her marriage to G.B. Third, she contends that the district court erred by allowing the trustee to consider other sources of income when determining her need for distributions of trust principal.

### A.

■■■ Virginia first contends that the district court erred by not properly interpreting the trust agreement and the caselaw concerning the extent of the trustee's discretion to grant or deny Virginia's requests for additional distributions of trust principal.

The parties' dispute arises from the fact that there are multiple beneficiaries of the trusts created by G.B. Virginia is the beneficiary of the Marital Trust, and G.B.'s living children and two of his grandchildren are beneficiaries of the Family Trust, which may or may not be funded upon the termination of the Marital Trust. The trustee of the Marital Trust must provide for Virginia's "health, education, support,

maintenance and care," which implies that the trustee has a duty to ensure that principal remains available for such purposes throughout her lifetime. *See Campbell's Trusts,* 258 N.W.2d at 865, 867. To the extent that Marital Trust principal remains after Virginia's death, the trustee must distribute it to the Family Trust.

In the district court, Virginia argued that Lowry Hill breached its duty by denying certain principal requests because G.B. intended for her to receive liberal principal distributions. But the district court concluded that Lowry Hill was within its discretion in denying Virginia's requests for additional distributions of principal on the ground that the trust agreement grants the trustee discretion in deciding whether to distribute principal. Specifically, the district court noted that the trustee " 'may distribute' principal to Mrs. Van Dusen, to the extent that the Trustee 'deem[s] advisable.' "

▇▇▇ As a general rule, a trustee has a duty of impartiality, which requires the trustee to "manage the trust with equal consideration for the interests of all beneficiaries." *In re Trust Known as Great Northern Iron Ore Properties,* 263 N.W.2d 610, 621 (Minn.1978) (quotation omitted); *Norwest Bank v. Beckler,* 663 N.W.2d 571, 581 (Minn.App.2003). But a grantor of a trust may express an intention to provide for one beneficiary to a greater or different extent than others, which requires the trustee to fulfill that intention. Restatement (Second) of Trusts § 183 cmt. a (1959); *see also Great Northern Iron Ore,* 263 N.W.2d at 621 (adopting and approving section 183 and comments "as an accurate statement of the law in this jurisdiction"). In that situation, a court must ascertain and give effect to the grantor's "dominant intention." *Stisser,* 818 N.W.2d at 502.

Virginia contends that the trust agreement reflects G.B.'s dominant intention to provide for her during her lifetime, even if doing so would diminish or preclude the funding of the Family Trust. She has identified several provisions of the trust agreement that support her contention. First, article V, paragraph A, requires the trustee to distribute all income to Virginia without qualification. Second, article V, paragraph B, provides that the trustee should "use principal liberally" in favor of Virginia "to enable her to maintain insofar as possible the standard of living to which she was accustomed during the Grantor's lifetime." Third, the same paragraph also provides that the trustee "shall have no obligation to consider other assets or income" in determining whether to distribute principal. Read together, these provisions reveal G.B.'s intent that principal be used liberally in favor of Virginia during her lifetime, without concern for the preservation of trust principal beyond her lifetime.

The language in paragraphs A and B of article V is noticeably different from the language in the trust agreement governing the Family Trust. Article VI, paragraph D(2), of the trust agreement provides that the trustee may distribute from the Family Trust "such sums from the principal ... as the Trustees ... shall deem proper." This language is less obligatory than the language of the Marital Trust, which instructs the trustee to distribute "as much of the principal as the Trustees deem advisable." Additionally, article VI, paragraph D(2), gives the trustee "sole discretion" to distribute principal from the Family Trust, whereas the Marital Trust does not use the word "discretion" but, rather, instructs the trustee to "use principal liberally." Article VI, paragraph D(2), also requires that, before distributing principal to a beneficiary of the Family Trust, the trustee give proper consider-

ation to "all other income and assets known by [the trustee] to be available ... to provide for his or her proper health, education and support." This language is different from the language of the Marital Trust, which provides that the trustee "shall have no obligation to consider other assets or income available" to Virginia. The contrast between the language of the Marital Trust provisions and Family Trust provisions supports the conclusion that G.B. intended for Virginia to receive benefits from the Marital Trust to a greater extent than those who may receive benefits from the Family Trust.

Furthermore, other provisions of the trust agreement suggest that G.B. contemplated that the Family Trust might not even be funded after the termination of the Marital Trust. For example, article IV, paragraph E, provides for the disposition of assets of the trusts as follows: "The Generation Skipping Share, and the Marital Share (and the Family Share, *if funded*) shall be disposed of as follows...." (Emphasis added.) Similarly, article VI, paragraph A, provides for the division of assets in the Family Trust as follows: "[T]he Trustees shall divide the assets of the Family Trust (as augmented by assets received from the Marital Trust, *if any*)...." (Emphasis added.) These provisions suggest that G.B. intended to make funding for the Family Trust contingent on principal being available after it was used "liberally" by the trustee of the Marital Trust for Virginia's "health, education, support, maintenance and care."

Although the language of article V indicates that the trustee has some discretion in exercising its duties, that discretion is not so broad that it may conflict with the intentions of the grantor of the trust. G.B. clearly expressed his intention that the trustee make liberal use of trust principal to provide for Virginia. Thus, we conclude that the district court misinterpreted the trust agreement to the extent that the district court permitted the trustee's exercise of discretion to defeat the purposes of the Marital Trust.

**B.**

▉ Virginia also contends that the district court erred by misinterpreting the trust agreement's provisions concerning the standard of living that is appropriate for Virginia.

The trust agreement states that G.B. "intends that the Trustees use principal liberally for [Virginia] to enable her to maintain insofar as possible the standard of living *to which she was accustomed during the Grantor's lifetime.*" (Emphasis added.) In the district court, Virginia argued that Lowry Hill failed to ascertain and ensure the standard of living that she enjoyed during her marriage to G.B. The district court rejected that argument. The district court concluded that the trustee did not have a duty to determine Virginia's standard of living while G.B. was alive because, "[a]fter 9–10 years of distributions without major complaint, a standard of living has been established." The district court also reasoned that determining the standard of living that Virginia enjoyed while G.B. was alive would be impractical and of "extremely limited" usefulness.

The Marital Trust expressly states G.B.'s intention that Virginia have access to trust principal for the purpose of attaining and maintaining "insofar as possible the standard of living to which she was accustomed during the Grantor's lifetime." The district court's order is inconsistent with this part of the trust agreement. Neither the district court nor respondents have cited any authority for the proposition that a trustee may contradict a grantor's intent, as expressed in the plain lan-

guage of a trust agreement, because of a beneficiary's subsequent pattern of conduct. Accordingly, Virginia's entitlement to trust principal necessary to fulfill G.B.'s intent is not defeated by the fact that she did not seek to enforce that entitlement for a number of years after G.B.'s death. Thus, the district court erred by deferring to the trustee's decision to apply the standard of living that Virginia has experienced after G.B.'s death, rather than the standard of living she enjoyed before his death.[1]

## C.

 Virginia further contends that the district court erred by allowing the trustee to deny her requests for additional distributions of principal after considering the income she receives from other sources.

The trust agreement provides that in determining whether to distribute principal, "the trustee shall have no obligation to consider other assets or income available to [Virginia]." In the district court, Virginia argued that the trustee is prohibited from considering her other assets and income when determining whether to distribute principal, but the district court disagreed. Lowry Hill contends on appeal that the district court did not err because the trust agreement states merely that the trustee "shall have no obligation to consider other assets or income."

Lowry Hill is correct that the "shall have no obligation" language does not foreclose the trustee from considering other sources of income. To say that a trustee

is not obligated to do something is not equivalent to saying that the trustee may not do so. G.B. could have said that the trustee *shall not* consider other sources of income, but he did not say so. The language of the trust agreement indicates that he left that matter to the trustee's discretion. *See* Restatement (Third) Trusts § 50 cmt. e (2003) (stating presumption that trustee has discretion to consider beneficiary's other resources); *see also* Paul G. Haskell, *Preface to the Law of Trusts* 39 (1975) (explaining that "trustee may ... consider the beneficiary's other income or not as he deems fit"). But the trustee's discretion to consider Virginia's other sources of income is nonetheless limited by other provisions of the trust agreement. Specifically, the trustee may consider Virginia's other sources of income so long as the trustee uses principal liberally to provide for Virginia according to the standard of living she enjoyed during her marriage to G.B.

## D.

Based on all the contentions discussed above, Virginia argues that the district court erred by concluding that Lowry Hill properly exercised its discretion by denying her requests for additional distributions of principal from the Marital Trust. She asserts that "G.B.'s entire trust scheme evidences G.B.'s intent to assure generosity in Virginia's favor."

 If a trustee acts "in good faith, from proper motives, and within the bounds of reasonable judgment" in distrib-

---

1. The parties' dispute is concerned not only with the general principles discussed above but also with some particular applications of those principles. For example, Virginia contends that her entitlement to additional distributions of principal extends to her desire to give gifts, on the ground that gift-giving was part of her standard of living during her marriage to G.B. Some types of gifts may go beyond the purposes of the Marital Trust (such as gifts made for purposes of estate planning or wealth transfer, *see* 26 U.S.C. § 2503 (2006)) or may be so large that they exceed the standard of living Virginia enjoyed during her marriage to G.B. On the other hand, some types of gifts may be consistent with that standard of living, if she gave similar gifts while G.B. was alive.

uting trust funds, we generally do not interfere with the trustee's exercise of discretion. *In re Ruth Easton Fund*, 680 N.W.2d 541, 549 (Minn.App.2004) (quotation omitted). But a trustee may not exercise its discretion in a manner that defeats the grantor's intent or the trust's purpose. *Id.* Thus, even if the trustees have "absolute, unlimited, or uncontrolled discretion, any attempt to violate the settlor's intent or the trust's purpose is considered an abuse of discretion." *United States v. O'Shaughnessy*, 517 N.W.2d 574, 577 (Minn.1994) (citing Restatement (Second) Trusts § 187 cmt. j (1959)). In such a situation, a court should provide a remedy for the trustee's abuse of discretion. *See Campbell's Trusts*, 258 N.W.2d at 866.

For the reasons discussed above, we conclude that the district court erred by concluding, as a matter of law, that Lowry Hill acted within its discretion when it denied Virginia's requests for additional distributions of principal. Thus, we reverse and remand for further proceedings.

## II.

■ Virginia next argues that the district court erred by concluding that the trustee acted within its discretion in denying her attempts to compel conversion of unproductive property to productive property.

■ In interpreting the language of a trust agreement, we "generally construe words and phrases according to their common and approved usage." *Stisser*, 818 N.W.2d at 502. If a grantor uses terms that "have a definite and well-understood meaning," those terms are presumed to carry that meaning. *Id.* (quotation omitted). We apply a *de novo* standard of review to a district court's interpretation of a trust agreement. *Id.*

Article V, paragraph C, of the trust agreement provides:

If any unproductive property is held by the Trustees in the Marital Trust, [Virginia], at any time, by written instrument to the Trustees, may compel conversion of such unproductive property to productive property, it being the Grantor's intention that [Virginia] shall have the full beneficial enjoyment of the Marital Trust.

In the district court, Virginia argued that the term "productive property" means "income-producing property" such that she may compel the trustee to convert assets that do not produce income into assets that do. The district court, however, reasoned that the term "productive property" is not synonymous with the term "income-producing property." Rather, the district court reasoned that "productive property" includes both income-producing property and property that "has the potential to appreciate or gain value over time," even though it may not create a "regular stream of income."

To interpret this provision of the Marital Trust, we may refer to caselaw that discusses the same term in similar contexts. *See Stisser*, 818 N.W.2d at 502 (explaining that courts will apply "definite and well-understood meaning" of trust language). In *Great Northern Iron Ore Properties*, the Minnesota Supreme Court referred to "productive" property when discussing a trustee's respective duties toward the income and principal beneficiaries of a trust:

"[T]he trustee is under a duty to the [income] beneficiary to take care not merely to preserve the trust property but *to make it productive so that a reasonable income will be available for him*, and he is under a duty to the [principal] beneficiary to take care to preserve the trust property for him."

263 N.W.2d at 621 (emphasis added) (quoting Restatement (Second) Trusts § 232

cmt. b (1959)). The supreme court's use of the term "productive" in that case indicates that "productive property" is property that generates "a reasonable income." *See id.* Similarly, in *In re Moore's Will,* 185 Minn. 342, 241 N.W. 63 (1932), the supreme court referred to "unproductive property" when discussing the duties of a principal beneficiary:

> [U]nder the general rule, it is the duty of the life tenant of real property to pay the taxes thereon, and that the beneficiary for life of a trust fund of this character should bear the expense of taxes from the income of the estate. That rule, however, is subject to an exception *where the unproductive property is being held at the discretion of the trustee for the benefit of the estate and where the remaindermen rather than the life beneficiary profit by the holding.*

*Id.* at 343–44, 241 N.W. at 63 (emphasis added). The supreme court's use of the term "unproductive property" in that case indicates that the term means property that does not produce income but increases the value of trust principal, thereby benefitting the remainder beneficiaries of the trust. *See id.; see also* Restatement (Third) Trusts § 79, cmt. g(1) (2007) (stating that trustee has duty to income beneficiary "not to retain or purchase unproductive or underproductive (low-income) property to an extent that jeopardizes the proper entitlements of that beneficiary through an inadequate income yield").

In light of these authorities, we conclude that the term "unproductive property," as used in G.B.'s trust agreement, refers to property that does not produce income, and that the term "productive property,"

as used in G.B.'s trust agreement, refers to property that does produce income. The former term may include property that appreciates in value even though it does not produce income. Unproductive property that appreciates in value but does not produce income is of no value or limited value to a beneficiary who has an absolute right to trust income but no rights or lesser rights to trust principal.[2]

Thus, the district court erred by granting summary judgment to Lowry Hill instead of Virginia on this issue. Lowry Hill had no discretion to maintain unproductive property once Virginia properly sought to compel the conversion of unproductive property to productive property. Virginia is entitled to relief on her claim that Lowry Hill breached its duties by not making the requested conversions. Accordingly, we reverse and remand for further proceedings.

## III.

Virginia last argues that the district court erred in two rulings on the parties' requests for attorney fees and costs.

### A.

■ Virginia first argues that the district court erred by giving the trustee discretion to pay the remainder beneficiaries' attorney fees and costs from either trust principal or trust income. Virginia does not challenge the remainder beneficiaries' right to recover attorney fees and costs or the amount of fees and costs ($274,556.67); she merely challenges the ruling that Lowry Hill may, if it so chooses, pay those fees and costs from trust income.

---

2. Virginia also argues that the district court erred by excluding her proffered expert evidence that "it is standard practice for a corporate trustee to convert all assets to income producing for the income beneficiary." Expert testimony of that type is unnecessary in light of our interpretation of the trust agreement's use of the terms "unproductive property" and "productive property."

■ Whether the remainder beneficiaries' attorney fees and costs are paid out of trust principal or trust income is governed by statute. A district court must order that any award of attorney fees and costs be paid from trust income "if the matter primarily concerns the income interest, unless the court directs otherwise." Minn. Stat. § 501B.71, subd. 1(4) (2012). On the other hand, a district court must order that any award of attorney fees and costs be paid from trust principal if the fees and costs "primarily concern[ ] matters of principal." *Id.*, subd. 3(1). Similarly, a district court must order that any award of attorney fees and costs be paid from trust principal if the expenses were "incurred in maintaining or defending any action to construe the trust or protect it or the property," unless the court "directs otherwise." *Id.*, subd. 3(2). To the extent that the statute allows the district court to "direct[ ] otherwise," the district court has discretion to determine whether fees and costs should be paid from trust income or principal. *In re Trusts Created by Hormel,* 504 N.W.2d 505, 513 (Minn.App.1993), *review denied* (Minn. Oct. 19, 1993).

In its ruling on this issue, the district court reasoned that "both the income and the principal are currently primary issues in this litigation." The district court reasoned that income was at issue because of the parties' dispute as to "Mrs. Van Dusen's standard of living and the sufficiency (or lack thereof) of the Trust income to maintain that standard." As explained above, the trustee has some discretion to consider the amount of income Virginia receives when determining whether distributions of principal are necessary to maintain the appropriate standard of living. But the issue for the district court was whether the trustee was or was not within its discretion when it denied Virginia's requests for additional distributions of principal. As a consequence of the district

court's rulings, the trustee was not required to make additional distributions of principal; as a consequence of this court's opinion, the trustee might be required to make additional distributions of principal. At issue is whether Virginia is entitled to more or less principal; the amount of trust income to which Virginia is entitled is not at issue.

For these reasons, Virginia's arguments to the district court and to this court do not "primarily concern[ ] the income interest." *See* Minn.Stat. § 501B.71, subd. 1(4). Rather, Virginia's arguments to the district court and to this court "primarily concern[ ] matters of principal." *See* Minn.Stat. § 501B.71, subd. 3(1). Accordingly, the remainder beneficiaries' attorney fees and costs must be paid out of trust principal, and the district court has no discretion to direct otherwise. *See id.* Thus, the district court erred by giving the trustee the discretion to pay the remainder beneficiaries' attorney fees and costs out of trust income.

### B.

Virginia also argues that the district court erred by denying in part her request for reimbursement of her attorney fees and costs.

■ Virginia's request for attorney fees and costs is governed by caselaw:

In the sound and cautiously exercised discretion of the court, and not as a matter of right, attorneys' fees and other expenses reasonably and necessarily incurred by all necessary parties to litigation may be allowed and properly charged to the trust estate where such litigation, with respect to substantial and material issues, is necessary in order to resolve the meaning and legal effect of ambiguous language used by the settlor in the trust instrument, if an adjudica-

tion thereof is essential to a proper administration of the trust, and if, without unnecessary expense or delay, the litigation is conducted in good faith for the primary benefit of the trust as a whole. *In re Atwood's Trust,* 227 Minn. 495, 501, 35 N.W.2d 736, 740 (1949); *see also In re Great Northern Iron Ore Properties,* 311 N.W.2d 488, 492 (Minn.1981) (applying *Atwood* to request for award of attorney fees). A party need not prevail to be awarded attorney fees and costs. *See Hormel,* 504 N.W.2d at 513. But the district court's discretion to award attorney fees and costs depends in part on the reasonableness of the party's arguments. *See Atwood's Trust,* 227 Minn. at 501, 35 N.W.2d at 740.

In this case, the district court denied part of Virginia's request for reimbursement of attorney fees and costs. The district court acknowledged that its ruling would need to be re-evaluated if this court were to provide appellate relief to Virginia: "If the decision handed down by the Court of Appeals substantively reverses the findings of this Court, related to Mrs. Van Dusen's requested relief, the Court would then consider re-visiting the issue of fees." Accordingly, we reverse and remand the issue of Virginia's request for attorney fees and costs for further proceedings.

## DECISION

The district court erred by granting summary judgment to the trustee on the issues of Virginia's entitlement to additional distributions of principal and her right to convert unproductive property to productive property. The district court erred by giving the trustee discretion to reimburse the remainder beneficiaries for attorney fees and costs using trust income. The district court erred by denying in part Virginia's request for reimbursement of attorney fees and costs. Therefore, we reverse and remand for further proceedings.

**Reversed and remanded.**